UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | 5:17-CR-50071-JLV |
| Plaintiff, | |
| vs. | ORDER DENYING MOTION FOR RECONSIDERATION OF DETENTION |
| MATTHEW KURTENBACH, | |
| Defendant. | |

**PROCEDURAL HISTORY**

Defendant Matthew Kurtenbach was charged on April 18, 2017, in an Indictment with Distribution of a Controlled Substances and Possession with the Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). A Writ of Habeas Corpus ad Prosequendum was entered on April 20, 2017, as Mr. Kurtenbach was serving a state court sentence and was being held in state custody at the South Dakota Community Work Center in Yankton, South Dakota. (Doc. 7 and Doc. 8).

On May 1, 2017, Mr. Kurtenbach filed a motion to quash the writ and requested that he be allowed to appear via videoconferencing and remain in state custody so he could attend his upcoming parole hearing. (Doc. 14). Mr. Kurtenbach appeared in person at an initial appearance and arraignment on May 1, 2017. The court denied as moot the motion to quash. (Doc. 14). Mr.

1

Kurtenbach entered not guilty pleas and a detention hearing was held. At the detention hearing, the government asserted the defendant should be detained in federal custody. Mr. Kurtenbach argued that he should be returned to state custody and indicated that he was willing to waive his rights under the anti-shuttling act. The court detained Mr. Kurtenbach. (Doc. 19).

Mr. Kurtenbach filed a motion to reconsider the detention order. (Doc. 23). The government opposes the motion. (Doc. 31). Additional related filings are Mr. Kurtenbach's reply memorandum (Doc. 35), Mr. Kurtenbach's supplemental motion (Doc. 54), and Mr. Kurtenbach's request for ruling. (Doc. 60).

## DISCUSSION

**A.     Reopening the detention hearing.**

The court previously determined that Mr. Kurtenbach is a danger to the community and a risk of flight. However, he seeks to reopen the detention hearing. Mr. Kurtenbach argues that he should be allowed to present evidence that returning him to state court custody constitutes a condition that will assure the safety of the community and assure Mr. Kurtenbach's presence at further proceedings. The government opposes the court readdressing the issue of detention on the grounds that no new evidence exists to merit reopening the detention hearing.

18 U.S.C. § 3142(f)(2)(B) provides that "[t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the

movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." The court finds that Mr. Kurtenbach offers no new information that didn't exist or wasn't known to him at the time of the hearing. Therefore, the court will not reopen the detention hearing. However, for purposes of supplementing the oral record at the detention hearing, the court will set forth its legal and factual basis for detaining Mr. Kurtenbach.

**B.     Risk of flight and danger the community**

The Bail Reform Act, 18 U.S.C. § 3142, governs the pretrial release of defendants in federal district court. In determining whether to release or detain Mr. Kurtenbach, the court is required to consider the following:

> (1)   the nature and circumstances of the offense charged, including whether the offense . . . involves a controlled substance;
>
> (2)   the weight of the evidence against the person;
>
> (3)   the history and characteristics of the person including:
>
>> (A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B)   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). For the ordinary case, the Act specifies a presumption in favor of release. 18 U.S.C. § 3142(a), (b), (c), and (e). The government may move for detention based on either risk of flight or danger to the community or others (or both grounds). 18 U.S.C. § 3142(f)(1).

In order to justify detention based on a defendant's risk of nonappearance, the defendant's risk of flight must be established by a preponderance of the evidence. United States v. Orta, 760 F.2d 887, 891 n.20 (8th Cir. 1985). In order to justify detention based on a defendant's dangerousness, the danger must be established by clear and convincing evidence. 18 U.S.C. § 3142(f).

However, in cases in which there is probable cause to believe that a defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 et seq.), the presumption is reversed and there is a presumption that the defendant should be detained pending trial. 18 U.S.C. § 3142(e)(3)(A). The presumption of detention found in § 3142(e) represents a Congressional finding "that certain offenders . . . as a group are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986).

4

The burden of rebutting the § 3142(e) presumption rests on the defendant.  See 18 U.S.C. § 3142(e).  The burden does not shift the burden of persuasion to the defendant, but only imposes on him a burden of production.  Id.  It requires the defendant to meet a burden of production "to offer some credible evidence contrary to the statutory presumption." United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985).  See also Dominguez, 783 F.2d at 707.  Even if the defendant satisfies the burden of production, the presumption does not disappear; instead the court is required to consider the presumption along with all other evidence before the court in coming to a conclusion whether to release the defendant.  Dominguez, 783 F.2d at 707.  Once the defendant has met his burden of production, the court cannot rely solely on the presumption in detaining the defendant.  Id.  Where a rebuttable presumption of detention exists, "the defendant bears a limited burden of production–not a burden of persuasion–to rebut that presumption by coming forward with evidence [that] he does not pose a danger to the community or a risk of flight." United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003) (quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)).

In other areas of the law, once a presumption has been rebutted, it disappears from consideration.  Not so with the rebuttable presumption of detention under subsection (e).  The Eighth Circuit has held that, "[o]nce a defendant has met his burden of production relating to [risk of flight and dangerousness], the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the

district court." Id.   The rebuttable presumption is a presumption as to *both* risk of flight and dangerousness.  See 18 U.S.C. § 3142(e).  Therefore, to rebut the presumption, the defendant must at least articulate facts that show that he is not a risk of flight *and* not dangerous.

Here, Mr. Kurtenbach is indicted for Distribution of a Controlled Substance (methamphetamine) 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(C).  At least one of the charges involves a maximum penalty that exceeds 10 years.  Therefore, the rebuttable presumption, as discussed above, applies.  As to the weight of the evidence, Mr. Kurtenbach set forth argument and unauthenticated documents asserting that the government's case is weak.  The government argues that a grand jury has found probable cause to believe Mr. Kurtenbach has committed the offenses.  The court finds that this factor does not weigh in favor of either party.

As for the remaining factors the court is to consider, Mr. Kurtenbach is 36 years old.  From the time Mr. Kurtenbach was 17 until his most recent conviction (a span of less than 20 years), Mr. Kurtenbach has been convicted of a staggering number of criminal offenses; by the court's count: 84 convictions.  Mr. Kurtenbach minimizes this by arguing that the vast majority of arrests are over 10 years old and none of them are violent offenses.

As to his argument that the majority of his arrests are over 10 years old, the court notes that Mr. Kurtenbach was convicted 30 times in the past 10

6

years. Significantly, he was serving multiple state custody sentences during that time frame. Any hiatus in Mr. Kurtenbach's criminal conduct can be attributed to being held in custody, not to reformed ways. Also significant is the increasing severity of his criminal behavior. Mr. Kurtenbach's criminal history escalates from traffic offenses and passing bad checks in misdemeanor amounts to forgery, using other people's identity to issue fraudulent checks and open fraudulent accounts, fraudulently obtain prescription medications, and possessing controlled substances.

The court also finds Mr. Kurtenbach's assertion that he has no history of violence to be inaccurate. In August of 2003, Mr. Kurtenbach was charged with domestic violence/simple assault. He pled guilty to a reduced charge of disorderly conduct and received a thirty day custody sentence. It appears from the pretrial report, that Mr. Kurtenbach was arrested for violating a No Contact Bond. Additionally, in 2013, three petitions for protection orders against Mr. Kurtenbach were filed. Two of the three petitions were dismissed.[1] However, the third petition was filed by attorney Rena M. Hymans and a Permanent Order for Protection (Stalking or Physical Injury) was issued on December 6, 2013. These facts demonstrate Mr. Kurtenbach's violent tendencies.

The court also finds that Mr. Kurtenbach's substance abuse history poses a danger to the community. Mr. Kurtenbach was convicted six times in three years of Possession of Alcohol by a Minor. During this same time frame, Mr. Kurtenbach was twice convicted of Driving Under the Influence. In 2014,

---

[1] One was withdrawn by the petitioner and the other was dismissed when the petitioner failed to appear at the hearing.

Mr. Kurtenbach was arrested twice for controlled substance crimes. He was convicted and sentenced to five years of custody for one of the charges. Mr. Kurtenbach's substance abuse history presents a danger to the community if he were to be released.

Under the Bail Reform Act, the court is also to consider a person's record concerning appearances at court proceedings. Bench warrants were issued on 52 occasions for Mr. Kurtenbach's failure to appear at court proceedings. Additionally, it should be noted that Mr. Kurtenbach has been arrested five times, four of which resulted in convictions, of Impersonation to Deceive Law Enforcement. These facts overwhelming establish that Mr. Kurtenbach takes affirmative actions to avoid his arrest, prosecution, and adjudication of his criminal actions. Once convicted, Mr. Kurtenbach has had eight bench warrants issued for failing to comply with his sentences. These facts establish that he has no regard for court orders. Mr. Kurtenbach is a flight risk.

Based on Mr. Kurtenbach's extensive criminal history, his history of violence, his substance abuse history, and his repeated failures to appear, the court finds that Mr. Kurtenbach is a flight risk and a danger to the community and the rebuttable presumption has not been overcome.

**C.  Whether returning Mr. Kurtenbach to state custody constitutes a condition which would reasonably assure the Defendant's appearance and the safety of the community**.

The crux of Mr. Kurtenbach's argument is that remanding him to state court custody would ensure the community would be safe and that he would appear at all future hearings. Mr. Kurtenbach seeks to be returned to state

8

custody for reasons which are advantageous to Mr. Kurtenbach, to-wit: so he can attend his parole hearing and habeas hearing.  The government opposes the motion arguing that such considerations are not relevant to the Court's evaluation under 18 U.S.C. § 3142.  Additionally, the government argues that releasing Mr. Kurtenbach to state custody would not ensure his appearance at future hearings, as there is no mechanism to return Mr. Kurtenbach to federal custody if he is granted parole or released from state custody.  In response, Mr. Kurtenbach argues that other magistrate judges have held the detention issue to be moot and encourages this magistrate judge to adopt a similar practice.  Additionally, Mr. Kurtenbach argues that any risk of flight is alleviated by the United States Marshal placing a detainer on the Defendant.

Pretrial release or detention is governed by the Bail Reform Act of 18 U.S.C. § 3142.  Mr. Kurtenbach fails to point to any other section of the United States Criminal Code which applies to the court's analysis.  Instead, Mr. Kurtenbach relies on cases where courts have either held the detention hearing in abeyance until a defendant's state court matters are resolved or cases where the court finds the detention hearing moot because a defendant is in state court custody.

The plain language of 18 U.S.C. § 3142 does not support a finding that a detention hearing is moot or that it should be held in abeyance.  On the contrary, it dictates:

> Upon the appearance before a judicial officer of a person charged
> with an offense, the judicial officer **shall** issue an order that,
> pending trial, the person be-

> (1) released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;
>
> (2) released on a condition or combination of conditions under subsection (c) of this section;
>
> (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion under subsection (d) of this section; or
>
> (4) detained under subsection (e) of this section.

18 U.S.C. § 3142(a)(emphasis added). Absent, is any provision allowing the court to find the issue of detention to be moot or to hold it in abeyance.[2] As discussed above, the defendant is a risk of flight and danger to the community, so release under 18 U.S.C. § 3142(a)(1) is not an option. Section 3142(a)(3) is inapplicable to Mr. Kurenbach's case. The only conceivable consideration is whether returning Mr. Kurtenbach to state custody would constitute a permissible condition under Section 3142(a)(2) which allows the court to consider release restrictions as outlined in Section 3142(c).

Under Section 3142(c)(1)(B)(i), the court can <u>release</u> a defendant with conditions of release, including a condition that the defendant "remain in the custody of a <u>designated person</u>, who agrees to assume supervision and to report any violation of a release condition of the court, if the designated person is able to reasonably assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community." This court finds the terms "release" and "designated person" used

---

[2] Section 3142(f)(2) allows a narrow exception for a continuance not to exceed five days. During the continuance, the statue mandates that the defendant is to be detained. Section 3142(f)(2) does not provide an option that a defendant be returned to state custody.

in Section 3142(c)(1)(B)(i) refers to a situation where a defendant is released into the community under the supervision of a 3rd party custodian, such as a family member or friend. It strains the plain language of the statute that Congress envisioned Section 3142(c)(1)(B)(i) be construed to mean that <u>release</u> equates to <u>returned</u> and that <u>designated person</u> equates to a <u>state entity</u>. Therefore, returning Mr. Kurtenbach to state custody under Section 3142 (c)(1)(B)(i) is not permissible.

In one of the cases cited by Mr. Kurtenbach, <u>United States v. Hayes</u>, No. CR-07-45-HE, 2007 WL 708803 (W.D. Okla. March 2, 2007), the United States Magistrate Judge returned a defendant to state custody. In <u>Hayes</u>, the court found the defendant was not a realistic escape risk. <u>Id.</u> at ¶1. The <u>Hayes</u> court found that even if the defendant were to otherwise pose a risk of flight or danger, that he clearly did not do so while in prison. The court also noted that Hayes was not eligible for parole until after his federal trial date. In a footnote, the <u>Hayes</u> court found that the term "release" and a "release order" may result in the defendant's entry into custody on other charges. Factually, Mr. Kurtenbach's case is distinguishable. This court finds, that even in state custody, Mr. Kurtenbach is a flight risk. Mr. Kurtenbach is eligible for parole and it is conceivable that he could be released. While he has not been previously charged with escape from custody, his 52 failures to appear and convictions for Impersonation to Deceive Law Enforcement establishes the measures Mr. Kurtenbach will take to evade the law. While in state custody, the United States Marshal lacks the authority to dictate the level of security or

11

supervision necessary to ensure Mr. Kurtenbach will remain in custody. Therefore, Hayes is factually distinguishable. As for the legal analysis of Hayes, the court does not adopt the legal reasoning that "release" should be construed to mean "return to state custody."

This court finds the reasoning in United States v. Dimmick, 82 F.Supp. 3d 866 (N.D. Iowa 2015), to be persuasive. The facts of Dimmick are very similar to Mr. Kurtenbach's case. Dimmick was in the custody of the South Dakota Department of Corrections at the time he was brought into federal custody on a writ for an initial appearance and arraignment on a Felon in Possession of a Firearm charge. The court analyzed whether Section 3142 applied when "no 'release' in a traditional sense (*i.e.,* the restoration of liberty) is possible." Id. at ¶2. The court concluded that neither Section 3142 nor any other statute creates an exception for defendants who appear by writ. Dimmick requested that he be returned to state custody because of an upcoming parole hearing. Dimmick argued that releasing him from federal custody would result in his return to state custody and therefore he would not be a risk of flight or danger to the community. The court noted that if it adopted Dimmick's argument, it would effectively mandate pretrial release from federal custody for any defendant appearing on a writ. Of significance to the Dimmick court and to this court is that "Congress could have specified, for example, that the fact a defendant would be returned to another jurisdiction's custody is a factor weighing in favor of releasing that defendant from federal custody. Congress did not do so." Id. at ¶4.

This court concludes that the Bail Reform Act's omission of any reference or guidance as to whether a defendant appearing on a writ[3] should be returned to state custody establishes that it is not a proper consideration under the Bail Reform Act. Given the court's conclusion that under the Section 3142 factors, Mr. Kurtenbach is a danger to the community and risk of flight he should be detained in federal custody. Accordingly, it is hereby

ORDERED that the Motion for Reconsideration (Doc. 23) is denied; it is further,

ORDERED that the Supplemental Motion (Doc. 54) is denied; it is further,

ORDERED that the Request for Ruling (Doc. 60) is denied as moot.

DATED this 2nd day of August, 2017.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge

---

[3] A frequent occurrence which would have been foreseeable to Congress.